[No. 4393. Decided April 18, 1903.]

SIDNEY NORMAN, *Respondent*, v. WESTERN UNION TELEGRAPH COMPANY, *Appellant*.

TELEGRAPH COMPANIES — LIABILITY FOR MISTAKE IN TELEPHONING MESSAGE — WHEN MESSENGER AGENT OF ADDRESSEE.

Where the person to whom a telegraph message was sent asked the messenger of the company to telephone him the contents of the telegram because he was outside of the free delivery district, he thereby constituted such messenger his own agent, and a mistake by the messenger in transmitting the contents of

the telegram could not be chargeable against the company on the theory of ratification of his acts from the fact of his being in their employ and' using a telephone in their office to repeat the message, with the knowledge of the telegraph operator, when there is nothing to show that the operator heard the message read over the telephone, or knew that a mistake had been made.

SAME — DELIVERY OF MESSAGE — SUFFICIENCY.

Any delivery of a telegraph message which, in law, would be good as between the receiver of the message and the company is good as between the sender and the company.

SAME — EVIDENCE — QUESTION FOR JURY.

Where a principal has testified that he does not remember having authorized his agent to send a certain telegram, but the agent testifies positively that he was so authorized, there is no such substantial conflict as to require the submission of the question to the jury.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

*Forster & Wakefield* and *George H. Ferons,* for appellant.

*Winston & Winston,* for respondent.

The opinion of the court was delivered by

FULLERTON, C. J.—This is an action for negligence brought by the respondent against the appellant. At the time of the occurrence of the transaction out of which the cause of action arises, the respondent was a broker residing in Spokane, in this state, and made it a part of his general business to buy and sell mining stocks. On February 11, 1899, finding where he could place some shares of stock of the Noble Five Consolidated Mining and Milling Company, he sought to purchase the same from one Burke Corbet, who then resided at Grand Forks, in the state of North Dakota. The correspondence between them was principally by telegraph, and it was from the trans-

mission and delivery of certain of the messages that passed between them that the claim of negligence arises. The principal facts relating to the transmission and delivery of the several messages were set forth in written stipulations entered into by the parties,—one introduced by the respondent and one by the appellant. The stipulation introduced by the respondent was as follows:

"It is hereby stipulated by and between the parties hereto as follows, to-wit:

"That between the 11th and 17th days of February, 1899, plaintiff delivered to the agent of defendant at Spokane, Washington, certain written messages for transmission over the lines of defendant to one Burke Corbet, at the City of Grand Forks, North Dakota, and received from the said agent certain written replies thereto, purporting to have been sent by said Corbet from said City of Grand Forks, North Dakota, which messages and replies were in words, letters and figures, as follows, to-wit:

"1st. 'Spokane, Wash., Feb. 11, 1899. To Burke Corbet, Grand Forks, N. D. Can you sell us five thousand Noble Five at twenty-four or better? Answer quick. S. Norman & Co.'

"2nd. 'Grand Forks, No. Dak., 2, 11, 1899. To S. Norman & Co. Spokane, Wash. Yes. Burke Corbet.'

"3rd. 'Spokane, Wash., Feby. 11, 1899. To Burke Corbet, Grand Forks, N. D. Forward immediately with draft attached. Will take some more. Will you sell? S. Norman & Co.'

"4th. 'Grand Forks, N. D., Feb. 11, 1899. To S. Norman & Co., Spokane, Wash. Yes. Burke Corbet.'

"5th. 'Spokane, Wash., Feby. 11, 1899. To Burke Corbet, Grand Forks, N. D. Send five thousand with draft attached and five thousand three days sight. Will place much more. Wire fully how much you will sell. S. Norman & Co.'

"6th. 'Spokane, Wash., Feby. 13, 1899. To Burke Corbet, Grand Forks, N. D. We wired you this morning saying we would take five or ten thousand more Noble

Five at the same price.  Message sent by mistake of Western Union to Grand Forks, B. C.  Can probably place twenty thousand besides the ten already bought.  S. Norman & Co.'

"7th.  'Grand Forks, N. D., 2, 14, 1899.  To S. Norman & Company, Spokane, Wash.  Wrote you fully yesterday, which answers all inquiries.  Burke Corbet.'

"8th.  'Spokane, Wash.  Feby. 17, 1899.  To Burke Corbet, Grand Forks, N. D.  Have not received stock or letter.  When were they mailed?  S. Norman & Co.'

"9th.  'Grand Forks, N. D. 2, 17, 1899.  To S. Norman & Co., Spokane, Wash.  On the thirteenth, about five P. M.  Burke Corbet.'

"That messages one, three and five were properly transmitted from Spokane to Grand Forks, and were at the request of said Corbet telephoned to his residence on Saturday evening, February 11, 1899, by one A. Kjorlien, a messenger in the employment of defendant at Grand Forks; that the written messages were not delivered to said Corbet until the Monday, February 13, 1899.

"That it is not intended by this stipulation to agree that said message one was telephoned by said Kjorlien either correctly or incorrectly.

"That said messages two and four were written by said Kjorlein and by him delivered to the operator at Grand Forks for transmission.  That said Corbet authorized the sending of message No. two.

"That it is not intended to agree whether or not said Corbet authorized the sending of message No. four, but that was written by said Kjorlein under a purported authorization of said Corbet.'

The one introduced by the appellant was as follows:

"It is hereby stipulated between the plaintiff and the defendant that A. Kjorlein was a messenger employed by the defendant at Grand Forks, North Dakota, during the year 1899, between the 1st and 28th days of February of said year, and at the time of the telegraphic correspondence between the plaintiff and one Burke Corbet referred to;

that the said Corbet resided out of the free delivery district described in the contract upon which the message was sent. And the several messages were delivered to the said Corbet, at his special instance and request, by the said messenger Kjorlein by telephone, and were afterwards sent as directed by said Corbet to his address within the free delivery limits of the office at Grand Forks. That the said messenger Kjorlein was not authorized to telephone said messages by the defendant, or otherwise than by the direction of the said Corbet.

"It is further stipulated that the said Burke Corbet resided more than one (1) mile from the office of the Western Union Telegraph Company in Grand Forks, and that the free delivery limits in said Grand Forks was one-half ($\frac{1}{2}$) mile. That the message described in the evidence and pleadings as Number One was received at about the hour of —— P. M. on the 11th day of February, 1899, and that it was a cold, stormy night, and the said messenger Kjorlein called up Mr. Corbet by telephone, as he had been requested to do, and informed him that he had a telegram for him, and that thereupon Corbet instructed him to 'phone it to him; and that on the next day, which was Sunday, he would call at the Telegraph Company's office for the original. That said Corbet did not call at the company's office during office hours of said Sunday, but did on said Monday morning receive the original of said message."

After the date of the receipt of message numbered four, and before the receipt of that numbered seven, as numbered in the first stipulation quoted, the respondent contracted to sell ten thousand shares of stock of the Noble Five Consolidated Mining & Milling Company; assuming that he had a contract of purchase for that amount with Corbet. The letter of Corbet mentioned in message number seven informed him that a mistake had been made in the delivery of the first message; that it had been telephoned him as reading "forty-four or better," instead of

"twenty-four or better," and that he had directed that it be answered "Yes" believing that the price offered was forty-four—further stating that he would not sell the stock at the price named, nor for any less sum than forty cents per share. The respondent, in order to fulfill his contract, was forced to go into the open market and buy the stock, which he did at a loss to himself of $625, and it is for this sum that he brought this action. The cause was tried before the court and a jury, resulting in a verdict and judgment for the amount claimed.

While many errors have been assigned, all of which have been more or less elaborately argued, the only assignment we have found it necessary to notice is the one which questions the sufficiency of the evidence to justify the verdict. The trial court instructed the jury that the effect of the facts recited in the stipulation entered into between the parties was to make the messenger boy the agent of Corbet, and that in telephoning the messages to Corbet, he was acting as the agent of Corbet, and not as the agent of the telegraph company. The court, however, assumed that there was some evidence in the record tending to show an adoption or ratification of the acts of the messenger boy on the part of the company, which would render it liable if the jury found it to be true, and gave them in this connection this further instruction:

"But if you should find from the evidence that although Kjorlein acted without authority in telephoning said messages to Corbet and receiving any answers from him, the defendant, knowing all that said Kjorlein did in that respect, adopted and acted upon the said acts of said Kjorlein, then the defendant would thereby assume all the responsibility therefor, the same as if said Kjorlein had been theretofore authorized by said defendant."

The evidence thought to sustain this, as pointed out by the respondent, is found in the testimony of the messenger. He testified that the telephone which he used when telephoning the messages to Corbet was in the company's office, and that the telegraph operator knew that he had telephoned the messages. But it seems to us that there is nothing in this that would render the company liable for a mistake of the messenger, on the principle of adoption or ratification of his acts. If the messenger was acting as the agent of Corbet, he was Corbet, in so far as the company was concerned, and his mistake was Corbet's mistake—just as much so as it would have been had Corbet received the message personally, and misread it himself. Certainly, had the latter been the case, there would have been no contention that the company would have been liable to the respondent for sending the answers it did under Corbet's directions, even had it known that Corbet had misread the message, and was answering unadvisedly. It would seem that its liability would not be different had it sent the message with knowledge that a mistake had been made by the agent, but even that is not a material question here. The messenger does not pretend that the operator heard him read the message, or that the operator knew that a mistake had been made; nor is there anything elsewhere in the record that tends to show that he did. On any theory, therefore, there was no evidence of ratification or adoption on which the company could be held liable.

The respondent further contends that, although there was a sufficient delivery of the message as to Corbet, there was no sufficient delivery as to him; that he had a right to assume there had been an actual copy of the written message handed to Corbet; and that the company is liable to him for any loss he has suffered because of its failure

to hand him such a copy. But the company's undertaking, as implied from its acceptance of the message for transmission, was not that it would make an actual delivery of it to Corbet in person, but was, rather, that it would make such a delivery as would constitute a delivery in law; hence, when it showed that it had delivered the message to the person whom Corbet had authorized to receive it, it had complied with its undertaking. Stated in another way, any delivery of a message which, in law, would be good as between the receiver of the message and the company is good as between the sender and the company. Doubtless the sender of a message can contract for a personal delivery of a message, in which case a delivery to an agent would not be sufficient, but no such contract is implied from the mere act of delivery of a message to the office of the company, to be transmitted in accordance with its usual regulations. The sender of the message loses no legal rights by reason of this rule. If the receiver makes a mistake through his agent, which causes loss to the sender, he is just as much responsible for that loss as he would have been had he made the mistake personally.

Lastly, it is said there was no authorization for the fourth message, and that the company is liable for that part of the injury which arose from its receipt by the respondent. We fail, however, to find any evidence to the effect that the message was not authorized. Corbet does not say that it was not, all he says is that he does not remember of having authorized it. While, on the other hand, the testimony of the messenger is positive to the effect that he did authorize it. It would seem that there was here no such substantial conflict as to require the submission of the question to the jury.

Concluding, as we do, that there is no evidence of negligence on the part of the appellant, the judgment appealed

from will be reversed, and the cause remanded, with instructions to dismiss the action at the respondent's costs, and it is so ordered.

ANDERS, MOUNT and DUNBAR, JJ., concur.